**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

PETER BERNEGGER,

        **Plaintiff,**

        **v.**                                 **Case No. 26-C-3**

DON M. MILLIS et al.,

        **Defendants.**

## DECISION AND ORDER GRANTING MOTION TO DISMISS

Plaintiff Peter Bernegger brought this action under 42 U.S.C. § 1983 against the members of the Wisconsin Elections Commission (WEC) and the WEC's administrator, alleging violations of the Help America Vote Act of 2002 (HAVA), 52 U.S.C. § 20901, *et seq.*, as well as violations of the First and Fourteenth Amendments of the United States Constitution. This matter comes before the court on Defendants' motion to dismiss Plaintiff's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, the motion will be granted.

### BACKGROUND

**A. Statutory Scheme**

HAVA was enacted in 2002 to "establish the Election Assistance Commission to assist in the administration of Federal elections and to otherwise provide assistance with the administration of certain Federal election laws and programs, to establish minimum election administration standards for States and units of local government with responsibility for the administration of federal elections," and for other purposes. Pub. L. No. 107-252, 116 Stat. 1666 (2002). HAVA

includes two enforcement mechanisms.  *See* 52 U.S.C. §§ 21111–12.  First, the "Attorney General may bring a civil action against any State or jurisdiction in an appropriate United States District Court" for declaratory and injunctive relief "as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements" under various HAVA provisions.  § 21111.  Second, "any person who believes that there is a violation of" HAVA's uniform and nondiscriminatory election technology and administration requirements subchapter "may file a complaint" under the "State-based administrative complaint procedures."  § 21112(a). In enacting HAVA, however, Congress did not create a private federal right of action.  *Wisconsin Voter All. v. Millis*, 166 F.4th 627, 634 (7th Cir. 2026) ("Congress has not created a private right of action for individuals to enforce HAVA in federal court.").

States that receive payment pursuant to a HAVA program must establish and maintain State-based administrative complaint procedures.  § 21112(a)(1).  HAVA lists the following requirements for such complaint procedures:

(A) The procedures shall be uniform and nondiscriminatory.

(B) Under the procedures, any person who believes that there is a violation of any provision of subchapter III (including a violation which has occurred, is occurring, or is about to occur) may file a complaint.

(C) Any complaint filed under the procedures shall be in writing and notarized, and signed and sworn by the person filing the complaint.

(D) The State may consolidate complaints filed under subparagraph (B).

(E) At the request of the complainant, there shall be a hearing on the record.

(F) If, under the procedures, the State determines that there is a violation of any provision of subchapter III, the State shall provide the appropriate remedy.

(G) If, under the procedures, the State determines that there is no violation, the State shall dismiss the complaint and publish the results of the procedures.

2

(H) The State shall make a final determination with respect to a complaint prior to the expiration of the 90-day period which begins on the date the complaint is filed, unless the complainant consents to a longer period for making such a determination.

(I) If the State fails to meet the deadline applicable under subparagraph (H), the complaint shall be resolved within 60 days under alternative dispute resolution procedures established for purposes of this section. The record and other materials from any proceedings conducted under the complaint procedures established under this section shall be made available for use under the alternative dispute resolution procedures.

§ 21112(a)(2)(A)–(I).

Wisconsin's HAVA administrative complaint procedure is set forth in Wis. Stat. § 5.061

and is entitled "Compliance with federal Help America Vote Act." That section provides:

(1) Whenever any person believes that a violation of Title III of [HAVA] has occurred, is occurring, or is proposed to occur with respect to an election for national office in this state, that person may file a written, verified complaint with the [WEC].

(2) If the [WEC] receives more than one complaint under sub. (1) relating to the same subject matter, the [WEC] may consolidate the complaints for purposes of this action.

(3) A complainant under sub. (1) or any of the complainants in a consolidated complaint under sub. (2) may request a hearing and the matter shall then be treated as a contested case under ch. 227, except that the [WEC] shall make a final determination with respect to the merits of the complaint and issue a decision within 89 days of the time that the complaint or the earliest of any complaints was filed, unless the complainant, or each of any complaints whose complaints are consolidated, consents to a specified longer period.

(4) If the [WEC] finds the complaint to be without merit, it shall issue a decision dismissing the complaint. If the [WEC] finds that the violation alleged in the complaint has occurred, is occurring, or is proposed to occur, the [WEC] shall order appropriate relief, except that the [WEC] shall not issue any order under this subsection affecting the right of any person to hold an elective office or affecting the canvass of an election on or after the date of that election.

Wis. Stat. § 5.061.

3

## B. Allegations Contained in the Amended Complaint

Plaintiff, a Wisconsin elector, submitted four verified, written HAVA complaints to the WEC. Am. Compl. ¶ 4, Dkt. No. 11. He does not provide the substance of his complaints, however. In other words, he does not say what the defendants did or failed to do that violated Subchapter III of HAVA. Instead, Plaintiff alleges that, even though the WEC received funding from the United States Election Assistance Commission (EAC), the WEC was not in compliance with HAVA. *Id.* ¶¶ 62, 68–73. In particular, Plaintiff asserts that the WEC had not submitted a state HAVA implementation plan to the EAC and has refused to provide an administrative complaint procedure. *Id.* The WEC returned the complaints "without consideration" because the complaints were brought against the WEC itself and the WEC members could not "process complaints naming themselves due to a 'conflict of interest.'" *Id.* ¶¶ 27, 64, 79–86. Plaintiff alleges that he was denied access to a federally mandated adjudicatory forum as well as "(a) a hearing on the record, (b) a written determination, (c) a reviewable decision, and (d) any timely relief before future elections." *Id.* ¶ 35.

Based on these allegations, Plaintiff asserts three claims for relief. In Count I, Plaintiff asserts a Fourteenth Amendment procedural due process claim based on allegations that HAVA created a "mandatory complaint forum" and that the WEC "eliminated the forum itself through a categorial refusal" to hear complaints against its members. *Id.* ¶¶ 88, 94. In Count II, Plaintiff alleges that Defendants violated Plaintiff's First Amendment right to petition by foreclosing access to the designated forum to bring HAVA administrative complaints. *Id.* ¶¶ 102–05. In Count III, Plaintiff asserts that Defendants violated HAVA by failing to establish and maintain a complaint procedure and failing to hear complaints against the WEC. *Id.* ¶¶ 107, 111. Plaintiff seeks declaratory and injunctive relief against Defendants for ongoing violations of Plaintiff's

Fourteenth Amendment right to procedural due process and First Amendment right to petition as well as violations of HAVA. *Id.* ¶ 1.

**LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the jurisdiction of a federal court over the subject matter of an action. Fed. R. Civ. P. 12(b)(1). "[A] plaintiff faced with a Rule 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). The proponent of federal jurisdiction must "prove those jurisdictional facts by a preponderance of the evidence." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 8 requires a pleading to include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must have factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, he must plead "more than labels and conclusions." *Id.* A simple, "formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks and citations omitted). In evaluating a motion to dismiss, the court must view the plaintiff's factual allegations and any inferences drawn

5

from them in a light most favorable to the plaintiff. *See Yasak v. Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi.*, 357 F.3d 677, 678 (7th Cir. 2004).

**ANALYSIS**

Defendants assert that the court should dismiss the amended complaint pursuant to Rule 12(b)(1) because Plaintiff lacks standing. Alternatively, Defendants argue that the court should dismiss the complaint pursuant to Rule 12(b)(6) because Plaintiff fails to state a claim upon which relief can be granted. Because the court must address jurisdictional concerns first, the court begins with Defendants' argument that Plaintiff lacks standing to bring his claims. *See Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) ("Standing is a threshold requirement because it derives from the Constitution's limit on federal courts' authority to resolve 'cases' and 'controversies.'" (citing U.S. Const. art. III, § 2, cl. 1; *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998))).

Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases" and "controversies" brought by litigants who demonstrate standing. *Garcia v. SigmaTron Int'l, Inc.*, 986 F.3d 1058, 1063 (7th Cir. 2021). If a dispute before the court is not a proper case or controversy under Article III, "the courts have no business in deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). One "landmark" of the case-or-controversy requirement is the doctrine of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "When a plaintiff lacks standing, a federal court lacks jurisdiction." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021) (citation omitted). To establish standing, the plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)

6

(citations omitted). "When seeking prospective relief, like a declaratory judgment or an injunction, plaintiffs also must establish a sufficient likelihood of future injury to secure standing." *Wis. Voter All.*, 166 F.4th at 632 (cleaned up). "The party invoking federal jurisdiction bears the burden of proof of establishing these elements," and "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan*, 504 U.S. at 561 (citations omitted). Defendants argue that Plaintiff has not plausibly alleged an injury in fact.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (internal quotation marks omitted). In other words, the plaintiff must suffer some actual or threatened injury. *Id.* Moreover, the injury must be concrete; it must actually exist and not be simply abstract or speculative. *Id.* at 340.

"Concrete injuries come in two varieties: tangible and intangible." *Wis. Voter All.*, 166 F.4th at 632. Tangible injuries, such as monetary and physical harms, "readily qualify as concrete injuries." *Freeman v. Ocwen Loan Servicing, LLC*, 113 F.4th 701, 708 (7th Cir. 2024) (citation omitted). Where a purported harm is intangible, "both history and the judgment of Congress play important roles" in determining whether the harm is concrete. *Spokeo*, 578 U.S. at 340. "[I]t is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* (citing another source). While "Congress may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law," its "role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-

7

fact requirement" whenever a statute creates a private right of action. *Id.* at 341 (cleaned up). Indeed, a "'bare procedural violation' of a federal statute . . . does not count as an intangible injury." *Wis. Voter All.*, 166 F.4th at 632 (quoting *Spokeo*, 578 U.S. at 342). "Deprivation of a procedural right, without showing some concrete interest that is affected by the deprivation, does not establish Article III standing." *Id.* at 633 (cleaned up).

Plaintiff asserts that his concrete injuries include "(a) denial of the hearing on the record Plaintiff requested; (b) denial of him [sic] making a record; (c) denial of a written determination, leaving Plaintiff with no reviewable decision; (d) denial of access to a docketed contested-case proceeding before a neutral adjudicator; and (e) denial of the opportunity to create a record—foreclosing meaningful review." Dkt. No. 16 at 4 (citing Am. Compl. ¶¶ 26, 28–31, 35, 43–45). Again, he fails to say what violation occurred that warranted a hearing before a neutral adjudicator, a decision, or meaningful review.

Even though Plaintiff contends that his amended complaint alleges a "concrete deprivation of a state-created adjudicatory entitlement, not a generalized demand for statutory compliance," *id.*, Plaintiff's alleged injuries amount to nothing more than bare procedural violations of HAVA. "Both history and the judgment of Congress tell [the court] not to treat this alleged violation of HAVA as an intangible harm." *Wis. Voters All.*, 166 F.4th at 635 (cleaned up). Without evidence of a concrete injury, Plaintiff's claim that Defendants violated HAVA is not cognizable in federal court.

Plaintiff lacks standing to raise his constitutional claims. Plaintiff asserts a Fourteenth Amendment procedural due process claim based on allegations that HAVA created a "mandatory complaint forum" and that the WEC "eliminated the forum itself through a categorial refusal" to hear complaints against its members. Am. Compl. ¶¶ 88, 94. The Due Process Clause of the

8

Fourteenth Amendment states that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause's procedural protections "will only be triggered if state action implicates a constitutionally protected interest in life, liberty, or property." *Lekas v. Briley*, 405 F.3d 602, 607 (7th Cir. 2005) (citations omitted).

Plaintiff alleges a "property interest" in his access to the HAVA complaint forum. Am. Compl. ¶ 88. Citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), Plaintiff asserts that "the right to use a state-created adjudicatory mechanism can itself be a protected property interest." Dkt. No. 16 at 4. But the Seventh Circuit has held that *Logan* cannot be "read so broadly." *Shvartsman v. Apfel*, 138 F.3d 1196, 1199 (7th Cir. 1998).

In *Logan*, the Illinois Fair Employment Practices Act established a process for adjudicating discrimination claims before the state Fair Employment Practices Commission. The Act required the Commission to conduct a fact-finding conference within 120 days of receiving an employment discrimination complaint. Logan filed a timely complaint asserting a claim of employment discrimination on the basis of handicap, but the Commission erroneously held the initial conference after the 120-day period had lapsed. The Illinois Supreme Court held that the Commission's failure to hold the conference within the mandated period deprived the Commission of jurisdiction over Logan's complaint and rejected Logan's due process arguments. *Logan*, 455 U.S. 424–27.

The United States Supreme Court reversed. The Court found that Logan had a protected property interest in his discrimination claim and that the dismissal of his claim as a result of the Commission's procedural error frustrated Logan's due process right "to have the Commission consider the merits of his charge, based upon the substantiality of the evidence, before deciding whether to terminate his claim." *Id.* at 428, 434. The Court held that the dismissal of Logan's

9

complaint violated his right to due process because he was prevented from using state adjudicatory procedures to redress his discrimination claim. *Id.* at 437.

The Seventh Circuit observed that "[t]he property interest in *Logan* was the underlying discrimination claim; the adjudicatory process constituted the process that was due in connection with the deprivation of that property interest." *Shvartsman*, 138 F.3d at 1199. The court explained that "the reason there is a right of access to adjudicatory procedures *is not* because litigants have property interests in the procedures themselves. Rather, access to adjudicatory procedures is important because it serves to protect the litigants' underlying legal claims." *Id.* (emphasis added). "This result is unsurprising," the court observed, "for defining access to procedures as a protectable property interest would eliminate the distinction between property and the procedures that are constitutionally required to protect it." *Id.*

In this case, Plaintiff does not allege an underlying property or liberty interest that was implicated by the statutory procedure. Therefore, his HAVA claims do not trigger a procedural due process right, and Plaintiff lacks standing to proceed on a Fourteenth Amendment due process claim against Defendants.

Plaintiff further alleges that Defendants violated his First Amendment right to petition. Plaintiff concedes that the WEC did not owe him a favorable response under the First Amendment, but he argues that his inability to access the forum is a violation of the right to petition. The Petition Clause of the First Amendment states, "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. The Petition Clause protects the right of access to courts and government forums; it "does not provide a right to a response or official consideration when people submit petitions to state agencies." *Wis. Voter All.*, 166 F.4th at 636 (cleaned up). Plaintiff has not alleged a colorable

Petition Clause injury. Plaintiff was not denied access to a government forum; he was able to file four complaints with the WEC. *See* Am. Compl. ¶ 4. "The Commissioners did not owe [Plaintiff] a response, so they could not create a constitutional injury." *Wis. Voter All.*, 166 F.4th at 636. Therefore, Plaintiff lacks standing to pursue his First Amendment claim.

In sum, because Plaintiff does not allege a concrete injury, the court must dismiss the amended complaint for lack of standing. And because Plaintiff has already amended his complaint once in response to Defendants' first motion to dismiss and has not sought to amend further, the case will be dismissed and judgment will be entered. *See Gunawardana v. Am. Veterinary Med. Assoc.*, No. No. 21-1330, 2021 WL 4951697, at *4 (7th Cir. Oct. 25, 2021) ("Such 'cat and mouse game[s] of motions to dismiss followed by a motion to amend,' need not be allowed." (quoting *Thompson v. Ill. Dep't of Pro. Regul.*, 300 F.3d 750, 759 (7th Cir. 2002))).

### CONCLUSION

For the above reasons, Defendants' motion to dismiss (Dkt. No. 13) is **GRANTED**. The Clerk is accordingly directed to enter judgment of dismissal.

**SO ORDERED** at Green Bay, Wisconsin this 3rd day of April, 2026.

William C. Griesbach
United States District Judge